Matthew Z. Crotty, WSBA 39284
Sawyer R. Margett, WSBA 53223
Riverside NW Law Group, PLLC
601 W. Riverside Ave., Ste. 810
Spokane, WA 99201
Telephone: (509) 850-7011
Email: mzc@rnwlg.com
      srm@rnwlg.com

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER RIELLY, ) | NO. |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | COMPLAINT |
| ) | |
| WALGREEN CO., ) | JURY DEMAND |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

The Plaintiff, JENNIFER RIELLY, by and through MATTHEW Z. CROTTY and SAWYER R. MARGETT, of RIVERSIDE NW LAW GROUP, PLLC, complains of Defendant and alleges as follows:

### I. PARTIES, JURISDICTION, & VENUE

1.    Plaintiff was employed by the above-captioned Defendant during the time-frame

COMPLAINT & DEMAND FOR JURY
TRIAL - 1

Riverside NW Law Group, PLLC
601 W. Riverside Ave., Ste 810
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

relevant to this lawsuit and lived in Spokane County, Washington.

2.     Defendant Walgreen Company ("Walgreens") conducted business in the Western District of Washington at all times relevant to this lawsuit.

3.     The Western District of Washington has jurisdiction over this case.

4.     The Court has both subject matter, diversity, and supplemental jurisdiction because of the nature of the claims pled and because Defendant is headquartered and maintains its principal place of business in Deerfield, Illinois and the amount in controversy exceeds $75,000.00.

5.     The administrative prerequisites of this lawsuit have been met as Plaintiff filed a charge of discrimination on December 17, 2025, received a right to sue letter on December 23, 2025, and filed this case within 90 days of December 23, 2025.

## II. FACTS

6.     Plaintiff incorporates the above facts as if pled verbatim herein.

7.     At all times relevant to this suit, Plaintiff has had a severe case of a condition called acute dermatographia.

8.     Dermatographia, also known as skin writing, causes Plaintiff's skin to be hypersensitive and hyperreactive to irritants and allergens.

9.      It also causes Plaintiff's skin to experience a painful allergic-like reaction (including but not limited to itching, redness, wheals, and painful red marks) when Plaintiff's skin comes into contact with substances or objects.

10.     When her condition isn't treated, this can occur when her skin comes into contact with water, clothes, other parts of her body, and other objects or stimuli.

COMPLAINT & DEMAND FOR JURY
TRIAL - 2



**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

11.     This condition, in its untreated form, interferes with almost every aspect of Plaintiff's life and day to day functions, included but not limited to showering, wearing clothes, going outside, and engaging in routine activities which would involve something making contact with her skin

12.     To treat her condition, Plaintiff began receiving treatments of a medication called Xolair in June 2023, which helps to inhibit the histamines which cause the painful reaction described above.

13.     To be effective, the medication needs to be injected at least once a month.

14.     These clinical trials are only available to Plaintiff in Spokane, WA. The treatments were non-transferrable.

15.     Additionally, Plaintiff is required to meet with her allergy doctor once every six months to get approval to stay on the treatment program.

16.     Without this approval, Plaintiff would be required to either go without the treatment altogether, or pay up to $10,000.00 out of pocket for each shot in the treatment plan, which would be const prohibitive.

17.     Additionally, Plaintiff sustained multiple injuries to her right knee and right foot while working for roughly 3.5 years as a stuntwoman at an amusement park in China.

18.     The harm caused by these activities caused Plaintiff pain and interfered with Plaintiff's ability to walk as well as to engage in other activities that required the use of her right leg.

19.     To address these issues, Plaintiff had three separate surgeries in 2021, 2022, and

COMPLAINT & DEMAND FOR JURY
TRIAL - 3



**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA  99201
(509) 606-0746 | rnwlg.com

2023.

20.    The surgery on the right knee was to repair a torn meniscus and to help treat her arthritis.

21.    The surgeries on the right foot involved addressing Plaintiff's bone spur, an increased bunion, and inserting and later removing a metal plate in Plaintiff's foot.

22.    To treat the chronic pain caused by these conditions and subsequent treatments involving her knee and foot, Plaintiff was prescribed medically necessary opioid medications.

23.    In order to legally possesses the amount of opioid medication needed to treat her chronic pain, Plaintiff must meet and adhere to the strict terms of a pain management plan created by her care provider Dr. Nathan Weims at the Spine Team Spokane Patient Management Clinic.

24.    To comply with the terms of the plan, Plaintiff must meet with her provider in Spokane every other month in person to provide information, answer questions, and subject herself to medical screenings and tests at least once every two months.

25.    Taken together, her health conditions required Plaintiff to be in Spokane between 1-2 times a month (but more often 2) to receive medical care and to treat her disabilities.

26.    These treatments have been effective in mitigating the discomfort, pain, and outbreaks caused by Plaintiff's health conditions and, when regularly administered, allowed her to better enjoy and meaningfully engage in routine major life activities.

27.    Defendant hired Plaintiff in September 2022 as a Store Manager Unassigned.

28.    Plaintiff held this role for roughly 1.25 years.

29.    After this, she was promoted to be the Store Manager of Defendant's NW Blvd

COMPLAINT & DEMAND FOR JURY
TRIAL - 4



**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA  99201
(509) 606-0746 | rnwlg.com

Spokane location.

30.    Defendant's NW Blvd location is a challenging location to run and operate.

31.    Despite this, Plaintiff received positive performance review scores for the two years she spent as a manager.

32.    Sometime around the Spring of 2025, Plaintiff applied to be promoted to a Field Human Resources Business Partner (FHRBP).

33.    The FHRBP position posting by Walgreens contained a list of "External Basic Qualifications" and a separate list of "Preferred Qualifications."

34.    Neither of these lists indicated that candidates were required to have (or would be preferred if they had) obtained a Society for Human Resources ("SHRM") Certification.

35.    The FHRBP position posting by Walgreens did say that candidates must be "Willing to travel up to/at least 75% of the time for business purposes (within state and out of state)."

36.    Plaintiff then went through two rounds of interviews both of which were led by Athena Collins.

37.    During the first interview, Plaintiff mentioned that she did "have a condition" which would require her to be in Spokane at least one to two times a month.

38.    Athena Collins represented that this wouldn't be a problem.

39.    During the second round of interviews, Plaintiff also explained that she would need to be in Spokane one to two times a month to receive treatment and meet with her doctors for both her skin writing and pain management needs.

COMPLAINT & DEMAND FOR JURY TRIAL - 5

40.      Athena Collins again represented that this wouldn't be a problem.

41.      During salary negotiations for the position, Plaintiff primarily worked with a male employee from Walgreens' Recruiting department.

42.      During negotiations, and in response to a counter-offer she felt was too low, Plaintiff explained that she would not be able to accept the salary and move within 50 miles of the Bellevue office without payment for relocation support.

43.      Walgreens' representative said there would be no relocation support for that difference.

44.      Plaintiff then informed the recruiter that she would have to be in Spokane at least 2 times a month on different weeks in order to receive treatment for her dermatographia.

45.      The recruiter again said that wouldn't be a problem.

46.      In the Spring of 2025, Walgreens made Plaintiff an offer for the FHRBP position "under the management of Athena Collins."

47.      A comment next to Athena Collins' name on Walgreens' internal documentation regarding Plaintiff's application shows that Walgreens internally believed that "The education in HR, HR certifications, and understanding of the business as a store manager makes [Plaintiff] a strong candidate for the position."

48.      Walgreens' offer letter further stated that: "Attached for your information and review is the Walgreens Remote/Hybrid Work Policy. This Policy applies to all team members who are working remotely either on a temporary, hybrid, or full-time basis. This Policy provides both team members' and their leaders direction on what is expected. By signing this offer letter,

COMPLAINT & DEMAND FOR JURY
TRIAL - 6



you are confirming you have reviewed this Policy."

49.    The policy said: "The advancement and adoption of key technologies have untethered most of the office workforce from any single physical location, enabling Team Members to work from a variety of locations. By leveraging technology, some Team Members may be able to work remotely during all or some portion of the work week… Subject to any broader policies that may apply from time to time regarding working on-site, it is up to Team Members and their leaders to find the balance between working on and offsite that best meets the needs of the team."

50.    The Policy further stated that "Leaders and people managers maintain the discretion to determine who works remotely and when. This determination is based on team function, collaboration needs, and Team Members' job performance. Walgreens' leadership has the right to refuse to make remote work available to a Team Member and to change a remote working arrangement at any time."

51.    On May 27, 2025, after some negotiating, Plaintiff accepted an offer for the position.

52.    Plaintiff began in her new role on June 3, 2025.

53.    Plaintiff's new salary was set at $93,562.56 plus benefits and estimated annual bonus opportunity that was projected to be at 5% of her annual income ($4,678.13 prorated for the benefit period).

54.    During the onboarding process, sometime between late June 2025 and early July 2025, Plaintiff informed Athena Collins that she would be required to be in Spokane 1-2 times a

COMPLAINT & DEMAND FOR JURY
TRIAL - 7



Riverside NW Law Group, PLLC
601 W. Riverside Ave., Ste 810
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

month to receive her treatment and meet with her doctor.

55.     At this time, Plaintiff explained the specifics of her condition, including the fact that she was being treated with this life-changing medication in Spokane, and that without treatment her skin writing condition seriously impacted her ability to function.

56.     Plaintiff also explained that, without the shots, even tiny drops of water that hit her would cause welts.

57.     Plaintiff also explained to Athena Collins that she needed to be in Spokane at least once every other month to deal with knee and foot injuries that Plaintiff sustained in her previous career as a stuntwoman.

58.     Athena Collins again said something to the effect of "that's no problem."

59.     Plaintiff occupied her new position without issue for four months.

60.     During the first 2.5 months or so, Plaintiff worked primarily out of Spokane.

61.     As part of her employment, Plaintiff began driving or flying to the different places she was required to go to for work in Alaska, Colorado, Oregon, and other places in Western Washington.

62.     When Plaintiff was required to work in Western Washington, she promptly traveled to Western Washington and often stayed with either friends or family to ensure she was completing her work expectations.

63.     On September 24, 2025, Plaintiff's out of region Walgreens mentor, who reported to Athena Collins, Anna Leena Crabtree, told Plaintiff that Athena Collins did not want Plaintiff to work in Spokane.

COMPLAINT & DEMAND FOR JURY
TRIAL - 8



**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

64.    Plaintiff responded by requesting an accommodation that would have allowed her to receive the medical care she needed.

65.    Specifically, Plaintiff asked Walgreens to accommodate her conditions by: (1) allowing her to work when she was in Spokane; and (2) modifying its position that she would be required to use Free Time Off (FTO) when she was in Spokane.

66.    Plaintiff's request was handled by or assigned to the Sedgwick Disability and Leave Center.

67.    Sometime around October 15, 2025, Athena Collins emailed Plaintiff and asked her if she had a SHRM certification.

68.    Plaintiff emailed Athena Collins a copy of her HR Management Certification.

69.    Athena Collins replied that this wasn't enough, and that she needed Plaintiff's SHRM certificate specifically.

70.    Plaintiff called Athena Collins and said she did not have her SHRM specifically, but that she would start the process of getting one.

71.    During this same call, Plaintiff again informed Athena Collins that Plaintiff was working from Spokane.

72.    Athena Collins then told Plaintiff that Plaintiff would have to take the rest of the day off and take FTO any time she was in Spokane.

73.    Plaintiff responded that would be difficult since Advanced Allergy and Asthma (where she received her treatments) was only located in Spokane and their services were non-transferrable. Therefore, the treatments she needed for her disability were only available in

COMPLAINT & DEMAND FOR JURY
TRIAL - 9



**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA  99201
(509) 606-0746 | rnwlg.com

Spokane.

74.    Athena Collins represented that she had believed that Plaintiff had her SHRM, and that Plaintiff would have to be written up for this.

75.    Athena Collins further responded in this conversation that Plaintiff either had "to step down to store manager" and take a final written warning or go on a PIP (performance improvement plan).

76.    Athena Collins never said what the PIP was for.

77.    Plaintiff then asked if the PIP would be specific and detailed so she knew what she had to do to meet the expectations.

78.    Athena Collins represented that it would be.

79.    Plaintiff, believing she had done nothing wrong and confident in her ability to show her ongoing value to Walgreens, said she would agree to go on the PIP.

80.    During this same conversation, Plaintiff offered to go get her SHRM certificate, Athena Collins told Plaintiff "not to worry about it" and that it's a "moot point" and that Plaintiff would simply go on a PIP.

81.    Athena Collins then nominally scheduled Plaintiff to appear at weekly "PIP" meetings where they could (presumably) discuss Plaintiff's performance and progress consistent with the alleged goals and aims of the PIP.

82.    The problem was that Walgreens never provided a PIP to Plaintiff or explained in any way what her performance deficiencies were or what metrics she needed to improve in order to avoid future adverse employment actions.

COMPLAINT & DEMAND FOR JURY TRIAL - 10

Riverside NW Law Group, PLLC
601 W. Riverside Ave., Ste 810
Spokane, WA  99201
(509) 606-0746 | rnwlg.com

83.    Instead, Athena Collins scheduled a meeting with Plaintiff for roughly one week later where they would presumably discuss the goals, parameters, and metrics of whatever the PIP was supposed to be and whatever form it was supposed to take.

84.    Athena Collins then delayed this meeting roughly once a week at least four times, to the point where she never met with Plaintiff to discuss her PIP before firing her.

85.    On October 15, 2025, Plaintiff sent Athena Collins a text message which said "I applied for scheduling my SHRM text. I will receive an invoice 48-72 hours."

86.    Afterwards, Plaintiff sent Athena Collins a text message which said "I will be able to test December 12th-20th. As soon as I receive my invoice I will be scheduling."

87.    Sometime around November 3, 2025, Plaintiff was discussing her requested accommodation with the Sedgewick representative.

88.    During this conversation, Plaintiff asked if she should apply for FMLA leave for the times where she had to be in Spokane while her accommodation claim was pending.

89.    The Sedgewick representative said he didn't know the answer to that question, since so few people used FTO, but said he would get back to her.

90.    He never did get back to her.

91.    During her entire employment with Walgreens, Plaintiff's only prior discipline was a single written warning for an event which occurred in February or March 2025 while she was a store manager, which involved Plaintiff mistakenly violating prior authorization policies while she was consolidating medications from multiple totes into a single tote.

92.    Walgreens did not require at least one—and potentially more—other similarly

COMPLAINT & DEMAND FOR JURY
TRIAL - 11



**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA  99201
(509) 606-0746 | rnwlg.com

situated employees to obtain SHRM certifications.

93.    On November 10, 2025 at 8:00 a.m., Plaintiff had a MS Teams meeting with Athena Collins and another individual from Walgreens Region 20.

94.    This meeting was supposed to be the long-delayed PIP meeting that Athena Collins had been delaying for over a month.

95.    Athena Collins then told Plaintiff her position was being terminated and she had 24 hours to turn her badge, phone, and work computer in.

96.    Athena Collins did not explain why Plaintiff was being terminated.

97.    On November 14, 2025, Plaintiff sent an email to Athena Collins which said that "There is a Walgreens Store Manger position open in Spokane. That is why I would like to receive my separation code so I can know if I can apply."

98.    On November 17, 2025, Athena Collins responded by saying "Due to the misconduct, you are not eligible for rehire."

99.    Walgreens has never explained what the "misconduct was."

100.    Walgreens never informed Plaintiff of her right to take or apply for FMLA leave.

101.    Plaintiff has suffered economic and non-economic damages as a result of Walgreens' acts including stress and mental and emotional suffering.

### III. CAUSES OF ACTION

102.    Plaintiff incorporates the above paragraphs as if pled verbatim herein.

**(Count One Family Medical Leave Act (FMLA) Interference)**

103.    The elements of an <u>FMLA interference claim</u> require proof the employee (1) was

COMPLAINT & DEMAND FOR JURY TRIAL - 12



Riverside NW Law Group, PLLC
601 W. Riverside Ave., Ste 810
Spokane, WA  99201
(509) 606-0746 | rnwlg.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

eligible for the FMLA's protections, (2) the employer was covered by the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee provided sufficient notice of [his] intent to take leave, and (5) the employer denied him FMLA benefits to which [he] was entitled." *Bushfield v. Donahoe,* 912 F. Supp. 2d 944, 953 (D. Idaho 2012) (*citing Sanders v. City of Newport,* 657 F.3d 772, 778 (9th Cir. 2011)). "The employer's intent is irrelevant to a determination of liability in an interference claim." *Id.* (*citing Sanders*).

104.    Employees are entitled to take FMLA leave when the employee is unable to work because of a serious health condition.

105.    Plaintiff repeatedly provided information about her acute dermatographia and her pre-existing knee and foot injuries, as well as her ongoing need for pain management and treatment, to various members and agents of Walgreens including Athena Collins and the Sedgewick representative.

106.    Plaintiff further inquired to Walgreens' Sedgewick representative about whether she would be able to take FMLA for times where she needed to be in Spokane to either attend doctors appointments or receive treatment for her acute dermatographia and her pre-existing knee and foot injuries.

107.    Plaintiff had worked over 1,250 hours in the year prior to when she submitted this inquiry and when she provided this information.

108.    At all times relevant to the lawsuit Walgreens employed 50 or more employees for at least 20 workweeks within a 75 mile radius of Plaintiff's work site.

109.    Here there is no dispute as to elements (1)-(4) above.

COMPLAINT & DEMAND FOR JURY
TRIAL - 13



**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

110.    The FMLA further requires employers to provide FMLA eligible employees with certain notices, including those set out in Department of Labor forms WH – 381 and WH 382.

111.    Defendant did not provide Plaintiff the WH – 381 and WH - 382 forms nor provide her information contained in those forms.

112.    Plaintiff was prejudiced by not having received the information contained in WH – 381 and WH – 382.

113.    Had Walgreens timely informed Plaintiff of her FMLA eligibility at the times Plaintiff informed Walgreens of her FMLA qualifying events and conveyed Plaintiff the information contained in the aforementioned forms Plaintiff would have taken the time off needed to seek ongoing medical care and treatment after she was hired for the FHRBP position.

114.    Additionally, under the FMLA an employer has five days to inform an employee of his/her eligibility upon learning of an FMLA qualifying event (such as need to take caregiver leave or bonding leave).

115.    Although on notice of Plaintiff's qualifying events, Athena Collins repeatedly told Plaintiff that she would have to take FTO when she was in Spokane.

116.    Further, the Sedgewick representative never responded to Plaintiff's inquiry.

117.    Defendant's violations of the FMLA caused Mr. Coulson damages in an amount to be proven at trial.

**(Counts Two and Three – Failure to Accommodate Under the Americans with Disabilities Act and the Washington Law Against Discrimination)**

118.    The ADA defines "disability" as including "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such

COMPLAINT & DEMAND FOR JURY
TRIAL - 14



**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA  99201
(509) 606-0746 | rnwlg.com

an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

119.    The ADA required Walgreens to engage in the interactive process and provide reasonable accommodations for their disabled employees.

120.    Liability for an ADA failure to accommodate claim arises whenever: (1) the employer knew of the employee's disability; (2) the employee requested accommodations or assistance for the disability; (3) the employer did not make a good-faith effort to help the employee seek accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Williams v. Philadelphia Hous. Auth. Police Dep't,* 380 F.3d 751, 772 (3d Cir. 2004); *Cravens v. Blue Cross & Blue Shield of Kan. City*, 214 F.3d 1011, 1021 (8th Cir. 2000); *see also E.E.O.C. v. Sears, Roebuck & Co.,* 417 F.3d 789 (7th Cir. 2005).

121.    Similarly, in Washington, an employer must provide a reasonable accommodation for an employee or qualified applicant with a disability unless the employer can show that the accommodation would impose an undue hardship on the employer.

122.    The Washington Supreme Court in *Holland v. Boeing Company*, 90 Wash. 2d 384, 387 (1978) noted that "the guaranty of equal employment opportunities" for the disabled is "far more complex" than in areas of race or gender discrimination where there is "no inherent differences between the general public and those persons in the suspect class." *Id*.

123.    *Holland* further noted the following: "Identical treatment may be a source of discrimination in the case of the handicapped, whereas *different* treatment may eliminate discrimination against the handicapped and open the door to employment opportunities."

COMPLAINT & DEMAND FOR JURY
TRIAL - 15

R|N
 |W
Riverside NW
Law Group

**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

124.    As a result, *Holland* "mandated positive steps to be taken" in the area of providing reasonable accommodation to the known disabling conditions and limitations of disabled employees. *Id.* at 389.

125.    Washington courts post-*Holland* have liberally interpreted the WLAD relating to disabled employees given the legislature's high priority to eradicate "workplace discrimination by providing an incentive for employers to accommodate disabled employees in safe positions." *Goodman v. Boeing*, 127 Wn.2d 401, 406 (1995).

126.    Washington's legislature, in keeping with its liberal treatment of the WLAD, amended the statute in 2007 to adopt a broader definition of "disability" and specify when an employee is eligible for accommodation for a disability:

> An employee qualifies for reasonable accommodation if he or she has an impairment that substantially limits his or her ability to perform the job, or the employer has notice of the impairment and medical documentation establishes a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the extent that it would create a substantially limiting effect.

*Johnson v. Chevron*, 159 Wash. App. 18, 28 (2010); RCW 49.60.040(7) (d).

127.    As a result of the amendments, "[m]edical necessity is no longer the sole basis for a right to accommodation[.]" *Id*. at 29

128.    In order to prove a WLAD reasonable accommodation claim, a plaintiff need only show four elements:  (1) the employee suffered from a disability, (2) she was qualified to do the job at issue, (3) she gave the employer notice of the disability, and (4) the employer failed to reasonably accommodate the disability.  *Mackay v. Home Depot USA, Inc.*, 12 Wash. App. 2d 557, 586 (2020).

COMPLAINT & DEMAND FOR JURY
TRIAL - 16



**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA  99201
(509) 606-0746 | rnwlg.com

129.    The notice obligation on the part of the employee "under the WLAD is not onerous." *Holland v. American West Airlines*, 416 F. Supp. 2d 1028, 1034 (W.D. Wash. 2006).

130.    The WLAD, in turn, "imposes a heightened duty on employers in that simple notice of an employee's disability is sufficient to trigger an employer's responsibility to accommodate." *Downey v. Crowley Marine Services, Inc.*, 236 F.3d 1019, 1024 fn. 6 (9th Cir. 2001).

131.    Furthermore, "the employee is not required to inform the employer of the 'the full nature and extent of the disability.'" *Martini v. Boeing Co.*, 88 Wash. App. 442, 457 (1997) (citing and quoting *Goodman v. Boeing*, 127 Wash. 2d at 408).

132.    "The duty to accommodate is a continuing duty that is not exhausted by one effort." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001).

133.    Here, Plaintiff's acute dermatographia and knee and foot conditions qualify as disabilities under the ADA and WLAD.

134.    Plaintiff was also qualified to, and was capable of performing, the core functions of her employment.

135.    Here, Plaintiff repeatedly put Walgreens on notice of her disabilities, including but not limited to: (1) during the interview process for the FHRBP position; (2) in conversations with Athena Collins; and (3) in her request to the Sedgewick representative.

136.    Moreover, Plaintiff explicitly requested that Walgreens accommodate her conditions in the Fall of 2025 by: (1) allowing her to work when she was in Spokane; and (2) modifying its position that she would be required to use FTO when she was in Spokane.

137.    Walgreens initially failed to engage in the interactive process when it received

COMPLAINT & DEMAND FOR JURY
TRIAL - 17



**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA  99201
(509) 606-0746 | rnwlg.com

notice of Plaintiff's conditions.

138.    Walgreens never accommodated Plaintiff's request for an accommodation.

139.    Plaintiff's requested accommodations were eminently feasible, would not have imposed an undue hardship on Walgreens, and were within Athena Collins' discretion to provide.

140.    Other potential accommodations exist which would not have imposed an undue hardship on Walgreens and which would have accommodated Plaintiff's disabilities and requests.

141.    Plaintiff has suffered economic and non-economic damages as a result of Walgreens' failures and omissions in amounts to be proven at trial.

**(Counts Four and Five – Retaliation Under the Americans with Disabilities Act and the Washington Law Against Discrimination)**

142.    A retaliation claim under the ADA requires showing "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *US E.E.O.C. v. Placer ARC*, 114 F. Supp. 3d 1048, 1059 (E.D. Cal. 2015).

143.    The Washington Law Against Discrimination ("WLAD"), RCW 49.60.210(1), makes it an unfair practice for any person to discriminate against a person because "he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter."

144.    An adverse employment action will support an award of damages when "(1) the employee engaged in a statutorily protected activity, (2) the employer took an adverse employment action against the employee, and (3) there is a causal connection between the employee's activity and the employer's adverse action." *Boyd v. State*, 187 Wash. App. 1, 11-12 (2015).

145.    Here, Plaintiff engaged in protected activity by putting her employer on notice of

COMPLAINT & DEMAND FOR JURY TRIAL - 18

Riverside NW Law Group, PLLC
601 W. Riverside Ave., Ste 810
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

her disabilities and by requesting that those disabilities be accommodated.

146.    Shortly after Plaintiff made her request, Athena Collins began insisting that Plaintiff: (1) no longer work when she was in Spokane; (2) use FTO when she was in Spokane; and (3) provide a copy of her SHRM certification.

147.    Athena Collins then gave Plaintiff the choice to either accept a demotion or go on a PIP with a final written warning.

148.    Plaintiff agreed to go on a PIP as a condition of keeping her current position.

149.    Walgreens never provided Plaintiff with a copy of her PIP, never explained what goals or metrics Plaintiff was supposed to meet, never told Plaintiff how she could improve her performance or avoid further discipline, and never provided Plaintiff any feedback on how she was doing from this point until her termination.

150.    Indeed, Athena Collins continuously delayed the scheduled "PIP" meetings until Walgreens terminated Plaintiff's position without explanation or further alleged bad acts from Plaintiff.

151.     Walgreens then characterized the firing in a way which made Plaintiff ineligible for rehire, depriving her of further employment opportunities.

152.    Walgreens' actions have caused Plaintiff damages to be proven at trial.

**(Count 6 – Wrongful Termination)**

153.    An employee states a cause of action in tort for wrongful discharge if the discharge contravenes a clear mandate of public policy.

154.    In assessing whether a clear mandate of public policy is violated courts inquire as

COMPLAINT & DEMAND FOR JURY
TRIAL - 19

Riverside NW Law Group, PLLC
601 W. Riverside Ave., Ste 810
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

to whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.

155.    The federal Family Medical Leave Act, 28 U.S.C. § 2601 *et seq,* Washington State's Paid Family Medical Leave Act, RCW 50A.40.010, the ADA, and the WLAD contain clear mandates of public policy regarding employees' substantive rights and their rights to be free from retaliation and interference for exercising their rights under the law.

156.    Here, Plaintiff exercised her rights under the ADA and WLAD by, among other things, requesting reasonable accommodations for her disabilities.

157.    Plaintiff also inquired about her rights to take FMLA leave and provided Walgreens with information about her disabilities and medical conditions.

158.    As a direct result, Walgreens terminated Plaintiff's employment.

159.    Walgreens' actions have caused Plaintiff damages to be proven at trial.

### IV. PRAYER FOR RELIEF

Plaintiff respectfully seeks:

A.    A trial by jury on all triable issues by 12 jurors.

B.    All damages allowed under the law including front pay, back pay, pre-judgment interest, adverse tax consequences, liquidated damages, and general damages including mental and emotional distress.

C.    Attorneys' fees, costs, and litigation expenses as allowed under RCW 49.48.030, 49.60.030(2), the ADA, the FMLA, and all other applicable sources of law.

D.    A declaration that Defendant violated the WLAD, ADA, and the FMLA.

COMPLAINT & DEMAND FOR JURY
TRIAL - 20



**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA 99201
(509) 606-0746 | rnwlg.com

E.      All other relief that is just and equitable.

DATED this 23rd day of January 2026.

RIVERSIDE NW LAW GROUP, PLLC

By: _____
Matthew Z. Crotty, WSBA No. 39284
Sawyer R. Margett, WSBA No. 53223
601 West Riverside Ave. Ste. 810
Spokane, Washington 99201
Telephone No. 509.850.7011

Attorneys for Plaintiff

COMPLAINT & DEMAND FOR JURY
TRIAL - 21



**Riverside NW Law Group, PLLC**
601 W. Riverside Ave., Ste 810
Spokane, WA  99201
(509) 606-0746 | rnwlg.com